# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.V. and A.V.**

**No. 20-0568** (Raleigh County 19-JA-34-K and 19-JA-35-K)

**FILED**
**February 2, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.G., by counsel Timothy P. Lupardus, appeals the Circuit Court of Raleigh County's January 27, 2020, order terminating his parental rights to L.V. and A.V.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S. L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Colleen M. Brown-Bailey, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to provide him notice of the adjudicatory hearing, failing to appoint him a guardian ad litem, and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed a child abuse and neglect petition alleging that the mother abused controlled substances while pregnant with L.V. and engaged in domestic violence with petitioner in the presence of the children. The DHHR alleged that the mother reported receiving no prenatal care while pregnant with L.V., and petitioner refused to allow the child to be tested for potential complications. Hospital staff observed bruising on the mother's arms and legs, but she was adamant that no domestic violence occurred in the home. The DHHR alleged petitioner was "overbearing," physically removed the mother's IV that contained penicillin, and had violent outbursts during the hospital stay. The DHHR alleged that the mother admitted to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

smoking marijuana for anxiety and reported that petitioner smoked marijuana to "cope with his 'mental issues.'" The mother reported that petitioner was clinically diagnosed with schizophrenia but had chosen to discontinue his medication and rely solely on marijuana as treatment for that condition. The DHHR further alleged that A.V. disclosed that petitioner made the mother hold her down while he whipped her with a belt and that the belt left marks and bruises. A.V. reported that she was afraid of the mother and petitioner when they fight and that law enforcement responded to the home as a result of her parents fighting. The DHHR obtained petitioner's criminal background history and alleged he was arrested for domestic violence earlier in February of 2019.

The circuit court convened a preliminary hearing in March of 2019, and the parties agreed to an in-camera interview of A.V. The circuit court held the in-camera hearing later that month. The court later found that the child "described incidents of physical abuse, such as whippings by [petitioner] with a belt which left bruises." The child related "that she regularly witnessed incidents of severe domestic violence between [her] parents. She further expressed extreme fear of her parents and was fearful of coming into contact with them."

In May of 2019, the circuit court held a second preliminary hearing. Petitioner appeared and represented himself, having declined counsel on a prior date. The mother also appeared and represented herself. Petitioner and the mother presented respective motions to dismiss the case on the basis that they were "common law people" of the State of West Virginia and therefore not subject to the jurisdiction of the circuit court. In their motions, the parents "characterize[d] their children as their 'property'" and requested the immediate return of their "property." The circuit court found that it had proper jurisdiction over the child abuse and neglect proceedings and denied the motion. At this point, petitioner began reading into the record a series of quotations and legal citations that were included in the motions to dismiss. Despite multiple warnings from the circuit court, petitioner continued to read and interrupt the proceedings, and the court ordered that he be removed from the courtroom. The mother exited with petitioner. Thereafter, the circuit court found that imminent danger existed to the children and ratified their removal from petitioner's care.

The circuit court held an adjudicatory hearing in June of 2019, and the parents did not appear. Prior to the hearing, petitioner and the mother filed a notice related to the hearing that they did "not believe it was in [their] best interest to make a 'physical', special visitation on said date due to fear of trespass against [them]." The DHHR presented evidence consistent with its petition. The circuit court found that there was a "significant amount of domestic violence" between the parents, "physical violence in the home, mostly perpetrated by [petitioner]," and evidence of illicit drug use. The court further found that the children were "subject to harsh discipline, including beatings" and that A.V. "lived in fear" of her parents. Accordingly, the circuit court adjudicated the children as abused children, and petitioner as an abusing parent.

In July of 2019, the circuit court held a dispositional hearing. Petitioner appeared, and, after the circuit court advised the parents of their right to counsel, decided to proceed without representation. The DHHR called a case worker to testify to the parents' lack of contact with the department, during which the parents "interfered with the examination of the witness" and petitioner "demanded to be charged with a crime and be given a jury trial." Petitioner further

"demanded that the child be evaluated by a psychiatrist or psychologist" and that the evaluation be recorded by video. The circuit court granted the motion for an evaluation, but ruled that the recording method would be left to the discretion of the evaluator. The circuit court also granted petitioner's request for a copy of the case file as he intended to hire counsel. The proceeding was continued, pending the results of the evaluation.

The circuit court reconvened the dispositional hearing in October of 2019.[2] Petitioner appeared in person and with counsel, but counsel moved to withdraw due to a breakdown in communication with petitioner. Petitioner agreed and decided to continue without representation. The psychologist who evaluated A.V. testified that she diagnosed the child with post-traumatic stress disorder and attention deficit hyperactivity disorder. She testified that during the evaluation, the child reported experiencing significant trauma and a resulting fear of her parents. The psychologist opined that the child would require long-term therapy. She believed that the child's "fear of her parents was so extreme and debilitating that the parents' exposure to the child should be severely limited or excluded." The parents' DHHR case worker testified that the parents had made no effort to communicate with the DHHR. The worker also said that DHHR received a bill from the parents for the time they expended on the case at a rate of forty cents per second, totaling over one million dollars. The worker explained that a family case plan could not be formulated due to the parents' refusal to cooperate with the DHHR. The mother denied that the child feared her and denied that she would allow the children to be harmed by herself or another. The mother also presented the testimony of a family member who denied that domestic violence occurred between the parties and that the child was afraid of her parents.

The circuit court held an evidentiary hearing in December of 2019 at the mother's request. She presented a video of A.V. opening presents on Christmas of 2018. According to the circuit court, "[t]he video depicted a happy child opening Christmas gifts that she was pleased to receive." However, the court "observed that such a video, taken on a special holiday occasion, presents only a solitary snapshot of family life . . . and does not necessarily reflect an accurate picture of day-to-day living in the home." The court further found that the video did not "negate the overwhelming evidence of maltreatment presented." The mother also introduced a "learned treatise" related to "disorders that may have a causal link with vaccinations of children."

The circuit court issued its ruling by its January 27, 2020, order. In that order, the circuit court found that "[e]xtreme and protracted conduct of domestic violence [] occurred between [the parents] in the presence of [A.V.]" The circuit court further found that the evidence "clearly and convincingly establishe[d] that [petitioner] frequently whipped the child . . . excessively, leaving marks and bruises upon the child's body." The court continued that "[the] parents have yelled at the child and threatened her on a constant basis, causing her to be fearful of them. . . . They have psychologically mistreated the child . . . to the point where she is fearful of them and does not feel safe." In regard to the parents, the circuit court found that they had "failed to cooperate with the [DHHR] in any meaningful and proper way, and have exhibited bizarre

---

[2]The circuit court attempted to hold a dispositional hearing in August of 2019. However, petitioner failed to appear. Petitioner's newly hired counsel moved to continue the proceedings based on his absence, which the circuit court granted.

3

behavior in these cases." The court concluded that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future as the parties demonstrated an inadequate capacity to solve the problems of neglect and abuse on their own or with help. Thus, the circuit court terminated petitioner's parental rights to the children. Petitioner now appeals that order.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court failed to properly notify him of the adjudicatory hearing and, thus, violated his due process rights. Petitioner simultaneously argues that he was not listed as a recipient of the order scheduling the adjudicatory hearing and that said order provided an incorrect time and date for that hearing. However, we find petitioner's arguments to be without merit. Petitioner correctly cites that "notice of the hearing shall be served upon both parents . . . giving to those persons at least five days' actual notice of a preliminary hearing and at least [ten] days' notice of any other hearing." W. Va. Code § 49-4-610(e)(1). As noted above, petitioner filed a notice related to the June 17, 2019, adjudicatory hearing on June 10, 2019. Further, petitioner dated his signature on that notice on May 30, 2019.[4] Petitioner's notice included the accurate date and time of the hearing, was signed by both parents, and asserted that it was not in their "best interest to make a 'physical', [sic] special visitation on said date due to fear of trespass" against them. Based on these facts, it is clear that petitioner had actual notice of the adjudicatory hearing on May 30, 2019, which was more than

---

[3]The mother's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption in their current foster placement.

[4]In his brief on appeal, petitioner clearly ignores that he signed his first notice on May 30, 2019. He instead references a second notice that also mentioned the adjudicatory hearing date, which he apparently signed and filed on June 14, 2019. In this second notice, petitioner requested "the immediate restoration of [his] property," referring to his children.

ten days prior to that hearing. Accordingly, we find petitioner is entitled to no relief in this regard.

Next, petitioner argues that the circuit court erred in failing to appoint him a guardian ad litem. Petitioner asserts that the DHHR's reference to unmedicated schizophrenia and his erratic behavior during the proceedings should have alerted the circuit court to the need for a guardian or at least an inquiry. In support, petitioner cites to Rule 17(c) of the West Virginia Rules of Civil Procedure, which provides "[t]he court . . . shall appoint a discreet and competent attorney at law as guardian ad litem for an . . . incompetent person . . . not otherwise represented in an action." However, petitioner fails to recognize that this Court has held that

> [t]he procedure in abuse and neglect cases is governed by provisions internal to [West Virginia Code § 49–1–101, *et seq.,*] and such other procedural requirements of the Code or general law as obtain. Except for Rules 5(b), 5(e) and 80, the West Virginia Rules of Civil Procedure for Trial Courts of Record are not applicable to such cases.

Syl. Pt. 2, *Matter of Lindsey C.*, 196 W. Va. 395, 473 S.E.2d 110 (1995).[5] Thus, the Rules of Civil Procedure do not apply, and we find petitioner's argument unpersuasive. Neither petitioner nor his (briefly) appointed counsel below requested a guardian ad litem, and as petitioner cites only to an inapplicable rule to support this claimed error, he has failed to demonstrate that he is entitled to relief in this regard.

Finally, petitioner argues that the circuit court erred in terminating his parental rights rather than imposing a less-restrictive dispositional alternative. He references the family member's testimony at the dispositional hearing and argues that the circuit court should have granted him "greater latitude as a [self-represented] litigant" for the adjudicatory process. Petitioner further contends that the DHHR should have offered a [post-]dispositional improvement period and additional time to remedy the conditions of abuse and neglect so that reunification with his children was a viable option. Petitioner's argument is without merit.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the child. Pursuant to West Virginia Code § 49-4-604(d)(5), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, . . . and the degree of family stress and the potential for

---

[5]Moreover, Rule 81(a)(7) of the West Virginia Rules of Civil Procedure provides that "rules 5(b), 5(e) and 80 [of these rules] apply, but the other rules do not apply, to juvenile proceedings brought under the provisions of chapter 49 [§ 49-1-101 et seq.] of the West Virginia Code."

further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent or parents in fulfilling their responsibilities to the child.

Notably, petitioner offers no challenge to the circuit court's finding that there was no reasonable likelihood that he could correct the conditions of neglect or abuse in the near future. Nevertheless, it is clear this finding is fully supported by the record. As found by the circuit court, petitioner subjected A.V. to consistent beatings that left marks and bruises and rendered her afraid of her parents. The parents also subjected her to consistent domestic violence and the emotional abuse that accompanies it. As a result of their actions, A.V. no longer felt safe in their care and, according to her psychological evaluator, would need long-term therapy to cope with her parents' past actions. Moreover, petitioner failed to acknowledge that this abuse occurred or that the child actually feared him. This Court has recognized that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Thus, even if granted an opportunity for treatment, petitioner's failure to acknowledge the issues rendered treatment futile. Accordingly, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of neglect and abuse in the near future.[6]

This Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

---

[6]Alternatively, the parents' failure to cooperate with the DHHR in any meaningful way also justifies the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of neglect and abuse in the near future. *See* W. Va. Code § 49-4-604(d)(2) (a circuit court may find that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future when "[t]he abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control").

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Thus, the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of neglect and abuse forecloses the less-restrictive dispositional alternatives that he seeks on appeal. It bears repeating, however, that petitioner's failure to acknowledge the conditions of neglect and abuse would lead to a futile post-dispositional improvement period at the children's expense. We find no error in the circuit court's termination of petitioner's parental rights.[7]

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 27, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: February 2, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[7]Petitioner also argues that the circuit court violated his First Amendment right when it authorized the DHHR to vaccinate the children, which he was opposed to on religious grounds. He argues that, as the natural parent of the child, he is guaranteed the right to raise his children in a manner that he deems appropriate. However, given that this Court has affirmed the termination of petitioner's parental rights, we find that this argument is now moot. "'Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.'" *State ex rel. W. Va. Secondary Schools Activities Comm'n v. Oakley,* 152 W. Va. 533, 537, 164 S.E.2d 775, 778 (1968).